Good morning, I'm Jesse Agatstein from the Federal Defenders of San Diego on behalf of Mr. Chipunov. I'll aim to reserve two minutes and I'll watch the clock, all right? So this court should reverse for two reasons. First, the indictment and the jury instructions did not include the subjective intent element required by the First Amendment under Counterman. And second, there was not enough evidence that the Suburban Superior Court building here was actively used for commercial purposes. Let me clarify, counsel, you're not challenging the constitutionality of the statute, right? Just that the indictment and the jury instructions have to include a subjective element. That's correct. It's as to the charge, not as to the statute as a whole. So as to that particular charge, Counterman controls because the charge here, which is conveying false or misleading information of malicious damage or destruction of a building by fire or explosives, that's conveying a real possibility that violence will follow. And so Counterman says we use the true threat doctrine. But whether analyzed under the true threat doctrine or as the government wants under the military security grave and imminent threat doctrine, the government would still need to show a subjective intent. And that's because the military security doctrine is supposed to be even harder to prove. Well, I struggle to understand your argument there because the statute itself encompasses more than just a true threat, right? That's why I asked whether you're really challenging the constitutionality of the statute or in some other way. So here, the way that they charge, it just mirrors exactly the language of the statute itself, setting aside the question of whether the statute encompasses only true threats. So I struggle to understand how it could be, how without a challenge of statute itself, an indictment that mirrors the exact language of the statute is deficient. So Counterman explained that it had an added element, that's at page 74, for true threats. And any speech, any criminal conduct based solely on speech needs to have some sort of First Amendment category of lack of protection to be charged, right? And so in Counterman itself, we mirrored, our challenge here is mirroring the challenge in Counterman. There, the defendant moved to dismiss the charge, saying this charge, as it stands, violates the First Amendment. So you're contesting the proposition that the statute covers more than just true threats? Counterman applies to true threats, and you're saying Counterman applies here. Yes. So that means you're saying he's only charged with true threats. That's correct. So that means the statute itself can't encompass the second component that Castaneda is talking about. Right, so Castaneda didn't deal with the First Amendment, right? The defendant there did not raise a First Amendment challenge. So here we are raising the exact kind of First Amendment challenge that Counterman says is appropriate, which is if a speech does not include, speech charge does not include a subjective intent to threaten, it violates the First Amendment. That's what the Fourth Circuit agreed in the case we submitted a 28-J on. That's in Rendleman. This is unusual, because it's not the usual over-breadth challenge that I think Your Honor is referring to. But this is the kind of challenge that Counterman says we should bring, and we did. And I'll note that Your Honor noted the indictment itself mirrors the language of the statute. But as this Court has said in Dubot, implied necessary elements not present in the statutory language must be included. And Counterman repeatedly refers, you know, this is an added element, it's a subjective element, it's a mens rea requirement. This is an implied necessary element. So if the Court doesn't have other questions on the First Amendment issue, I can move on to the sufficiency of the evidence issue. As did the interstate commerce. Yes, that's correct. So the government put in insufficient evidence that the Superior Court building was actively employed for commercial purposes. So this is a higher bar than the usual Commerce Clause floor, as the Supreme Court said in Jones. And no case has allowed so little evidence in a building that's not inherently commercial. So without information about whether the Leica cafeteria or snack shop or something like that, whether it was open to the public, whether it was operated at cost or for profit or anything else, there's just too little evidence. Counsel, wasn't there testimony that there was a snack shop there? And wouldn't that suffice the requirement? So not in a building that's not inherently commercial. So the exact testimony was whether there was, quote, Leica cafeteria or snack shop or something like that. And I'll contrast that with this Court's case, Sorong, which was pre-Jones. So it was using a lower bar. But even still, there, that was a privately owned restaurant open to the public that received a half million dollar insurance payout for the fire. And most importantly, I think, had received substantial cash from an out-of-state investor. Actually, thinking of the U.S. versus Renteria, I thought that was a synagogue that operated a gift shop. I think there was a preschool daycare. Yeah. And what was important to this court in Renteria was that each child paid $5,000 a year for that daycare. It was open both to synagogue members and non-synagogue members. What do you mean? Why does paying $5,000 make a difference? Well, I think if it was free or at cost, that would change whether it was actively used for commercial purposes. For example, if it went more to, it was a daycare operated. That has nothing to do with interstate commerce. I mean, all the students could be local students. Well, so it does have to do with whether it's active use for commercial purpose, which is a higher bar than the Commerce Clause floor. This Court said this is a case-by-case analysis. We look to everything the government submits in the record. And there it mattered both that this Court mentioned that children, you know, the parents of the children paid $5,000 a year. Active use requirement doesn't have to be the primary activity in the building, right? Doesn't have to be the primary activity. But if it's not the primary activity, this Court has looked more closely. It's sort of, this Court explained that difference in Mayhem, where it said we're not transforming every municipal building into something that can meet this definition. We're always looking case-by-case, seeing what kind of evidence. Counsel, why wasn't it, why is it, why is it insufficient that this was a snack shop? Why is that, does it have to be, does there have to be more testimony? I mean, is that the problem here, that there wasn't enough testimony about that? A description of how much the snack shop was used, the operation of it. I mean, is that the problem? The fact that it was, that's there may suffice, but it wasn't sufficient. Is that your argument? Yes, particularly in a building that's not inherently commercial in a municipal building. So we're not saying the government couldn't prove a Superior Court was used in, actively used for a commercial purpose. I'm sure it totally could, many Superior Court buildings. The point is just that the government didn't take the extra step to ask one extra question, two extra questions. Do you rent this out to an independent contractor? Is it open to the public? What about the testimony? I think there was testimony to this effect, general testimony, that you know, the parties in the cases that were adjudicated in the court often, you know, came from out of state. Yeah, I think that there's a difference between being a private law firm representing those parties, that's a commercial purpose, and being the court that resolves disputes between those parties. There's no published case that says courthouses are inherently actively used for commercial purposes. That doesn't seem to fit quite right. But I recognize I'm low on time. No, that's okay. I do have one question. I'll give you your two minutes back. I'm trying to figure out, under your argument, and back to the first issue now, what we do with Kastanaga, because Kastanaga flat out said that this statute is not ambiguous as the signatory requirement, that it really looked at the statute in two parts, and that's the second part, the Congress-intended and objective standard. So to accept your argument, is it under a Miller v. Fermi type analysis? We'd have to reject that reading of the statute. So we're not saying that the statute includes a subjective intent element itself. The statute and countermeasure did not. What we're saying is charging under the statute without including a subjective intent element violates the First Amendment. So we're saying the indictment as it stands violates the First Amendment, and so do the jury instructions. That doesn't answer my question, because Kastanaga says it's an objective standard, so no subjective intent element required. To get around that, is that a Miller v. Fermi analysis? That countermeasure is clearly irreconcilable. Now, our case law is clearly irreconcilable with countermeasure. Is that your argument? This Court could take that approach. I'll notice Kastanaga didn't address the First Amendment issue at all, very explicitly. So I think it left open what to do with First Amendment challenges to this, but this Court could take that approach. All right. Thank you, Counsel. Thank you. Good morning. May it please the Court, Zach Howe for the United States. The indictment and the jury instructions did not improperly omit a subjective intent to threaten element, because the law does not contain that element. The Kastanaga case has already been cited by the does not include a subjective intent to threaten element. That case is dispositive here. If there is no subjective intent to threaten element in the law, then the jury instructions and the indictment don't have to allege a subjective intent to threaten element. Now, I think my friend on the other side has said that she is not raising a First Amendment challenge to the law, and so the citation to First Amendment cases, I think, is neither here nor there. There were citations to First Amendment cases in Kastanaga. Well, I understand Counsel's argument. She's saying that the government prosecuted Mr. Chibinoff for a true threats violation. So that's how she brings it squarely within the subjective element requirement of countermen. Sure. So I think it would have to, if we're invoking countermen, it would have to go to constitutional challenge to the law itself. Because the only way that you insert a First Amendment true threats countermen type of argument into a consideration of the indictment or the jury instructions is if the law actually requires that. And so maybe this is some sort of constitutional avoidance argument for why the law should contain that element when it's a true threat. But constitutional avoidance only comes up if the law is ambiguous. And again, Kastanaga said that the law clearly and unambiguously does not require the subjective intent to threaten element. But then even if we were going to get into the realms of the First Amendment, this court has already addressed this very statute in the Kaiser case. And it said that it was a constitutional law not under the true threats doctrine, but instead under the grave and imminent threat that the government has the power to prevent doctrine. And we know that those are doctrines because the Kaiser case specifically upheld a federal threats law under the true threats doctrine because it had a subjective intent to threaten. But then when it hopped over to the hoax law, it did not invoke the true threats doctrine. It instead invoked this grave and imminent threats exception. So whether you're talking about the statutory interpretation question or the constitutional question, you have binding authority on point here. And because the counterman is solely dealing with true threats, a doctrine that was never invoked, it simply doesn't have much to say about this issue. So I'm happy to answer more questions on that issue. Otherwise, I can move over to the interstate commerce element. There was sufficient evidence on the interstate commerce element. But I will say it certainly would have been nice to have a more fulsome record. I'm not arguing otherwise. But the testimony that counsel, that's the biggest understatement in this case. I mean, tell me specifically, what was it that, I mean, one reference to a snack shop and that this is a courthouse that has parties that presumably are from out of state. I mean, here's the other thing. Okay. So several of us on this were district court judges. We know how state courthouses work. You often get prisoners from out of state. You often get parties from out of state. Should we be using our common sense and experience? I mean, or should we just look strictly at this record and say, they mentioned the snack shop once and then that party might be from out of state. I mean, that's all that there is in this record. So let me try and unpack all that. I do think the jurors are entitled to use their common sense to draw reasonable inferences from the evidence. But here, even just looking at the four corners of what directly was said, again, I'll agree it was sparse, but I do think it's a feist here. Let me give you the exact quote and I'll break it down. There were two categories relating to interstate commerce. One is the cases the court heard. The other is the snack shop or cafeteria. The quote on the snack shop or cafeteria was that there are various other businesses in the courthouse too, like a cafeteria or snack shop or something like that. So it's undisputed that you have some sort of eatery-related business, and it was referred to as a business. So not a charity or anything like that. They're not giving the food away. This is a business that hands out food. And as this court held in the Sarang case, a restaurant is a property that falls within the ambit of 844I jurisdiction. In fact, the court said in that case that, quote, all business property has a per se substantial effect on interstate commerce and is subject to regulation by Congress in 844I. And in that case, there was no discussion of the revenue of the restaurant or anything like that. So I think the only question really left for the court is, what do you do with the fact that this is an ancillary function as opposed to the core business of the court? But this court has already addressed that issue as well. Renteria, which Judge Mendoza, you cited, is a good example of that. It said that when you have an ancillary function, so long as that ancillary function falls under 844I, the building itself falls under 844I. There it was, that synagogue that had a that is running an eatery-related business, to bring it within jurisdiction. And then as to the cases themselves, again- But when they, when they, one, I imagine, I hear their, I hear your friend on the other side arguing that when they, there is this ancillary use of the building, that there needs to be more, a more fulsome description in the testimony such that they can make the proper inferences. Here, there was a passing comment. We've never held in ancillary use cases that this level of information is sufficient. Is this going to be the first, or do you have another example of, what's your best case saying that this is sufficient? You know, I don't know that I can point you to a case that says you need one level of detail versus another level of detail when it's ancillary or non-ancillary. I don't think there's any cases on that on either side of the ledger, but I don't think it could be reasonably said that Sarang would have come out a different way if the restaurant were, in fact, inside of a larger building. Because, you know, the fact that you've got a restaurant that is used in an activity affecting interstate commerce is, by the plain terms of the statute, 844I, enough to bring it within the jurisdiction of the court. So whether the function that meets the definition of 844I is within a larger building or not should be neither here nor there. I think that is the general proposition that Renteria stands for, and when it was discussing the $5,000, it never said that that was necessary to bring it within the jurisdiction of 844I, to my knowledge. It certainly mentions those details, but there are many cases that don't mention those details. One I mentioned is Sarang, but we also cite a number of real estate cases on page 26 of our brief. None of those, to my knowledge, mentioned, you know, intricate details about profits or losses or anything like that. So I think at the point when it is undisputed that there was this eatery-related business within the courthouse, that should be enough to bring it within the jurisdiction of the court. And then I'll briefly mention, again, this was sparse testimony, but there was testimony establishing that this court heard civil cases, criminal cases, restraining order cases, family law cases. It heard cases between out-of-state parties. It heard cases between foreign parties. I think we would be asking the jurors to really stick their head in the sand to assume that when you have a full-service court, none of those cases involve a business, none of them involve a shoplifting charge or a traffic ticket with an out-of-state party or any of dozens of other sorts of cases that you would expect a full-service court to hear that affect interstate commerce. So again, I agree that the testimony is sparse, but I think drawing all inferences in favor of the government and the verdict and viewing the evidence in the light most favorable to that verdict, this was enough here to invoke the court's jurisdiction. So I see I have about one minute left. I'm happy to answer other questions. Otherwise, I'd ask the court to affirm, and I'll yield the remainder of my time. Thank you, counsel. Thank you. Two minutes. Thank you. So we'll start with the strangeness that is the sort of First Amendment analysis of Counterman, which did not do an overbreath challenge, did not analyze the Colorado statute there as a whole. What happened in Counterman is the defendant said, moved to dismiss the specific charge under the First Amendment and said, if you're going to prosecute me under the statute, you have to also prove a subjective intent element. And the Supreme Court said, yes, and then reversed. And so that's how we framed our argument here. Below, we moved to dismiss the charge under the First Amendment, explaining it needed a subjective intent element to comply with the First Amendment. And that's how we're here. So I'll acknowledge the strangeness of that. That's not often how we analyze First Amendment issues. But in Counterman, it called the sort of subjective intent element a strategic protection that features across all major categories of unprotected speech, defamation, obscenity, incitement. And so whether this court analyzes the statement under true threats, whether it analyzes under military security, the subjective intent element is a core constitutionally required proof. On the sufficiency of the evidence issue, I'll note that Serang was before Jones, before the Supreme Court in Jones established this new test, which is not just affecting interstate commerce in any way, but whether the building itself is actively used for commercial purposes. And under that test, the really flimsy evidence here just does not meet that bar. I'll point this court to the bank, some federal bank crime convictions, in which evidence that a bank is federally insured at the time of trial is insufficient evidence to prove that it was insured at the time of the offense. And jurors can use reasonable inferences to assume that a bank once insured is probably always going to stay insured. But that's just not enough. Any additional questions? Thank you very much. The matter is submitted.
judges: TASHIMA, NGUYEN, MENDOZA